# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDGAR ALEJANDRO MALDONADO, ) | NO. CV 06-2050 VAP (FMO) |
| Petitioner, ) | |
| v. ) | **ORDER ACCEPTING FINDINGS,** |
| ) | **CONCLUSIONS AND RECOMMENDATIONS** |
| RAUL LOPEZ, Warden, ) | **OF UNITED STATES MAGISTRATE JUDGE** |
| Respondent. ) | |

## **INTRODUCTION**

On April 5, 2006, petitioner, proceeding pro se, filed a Petition for Writ of Habeas Corpus by a Person in State Custody ("Petition") pursuant to 28 U.S.C. § 2254. On April 6, 2006, the Federal Public Defender was appointed to represent petitioner. On August 1, 2006, respondent filed a Return to the Petition and, on January 9, 2007, petitioner filed his Reply to the Return.

On August 7, 2007, the Court granted petitioner's motion to amend and ordered his First Amended Petition ("FAP") filed as of January 31, 2007. On October 4, 2007, respondent filed a Supplemental Return. On November 7, 2007, petitioner filed a Supplemental Reply.

On November 18, 2008, an evidentiary hearing was held ("Evidentiary Hearing") before the assigned Magistrate Judge. Petitioner and counsel for both parties were present, and the prosecutor from petitioner's state court trial was the only witness who testified. (See Reporter's Transcript of Evidentiary Hearing ("ERT") at 3-4). On February 23, 2009, petitioner filed a Post-

Hearing Memorandum of Points and Authorities. Respondent filed a Memorandum of Points and Authorities Re: Evidentiary Hearing ("Resp's Memo") on March 9, 2009.

In the meantime, on February 4, 2009, petitioner filed a Motion for Leave to Amend his FAP. On March 25, 2009, the Court stayed the action so that petitioner could exhaust one additional claim, i.e., an ineffective assistance of counsel claim for counsel's alleged failure to communicate a plea offer to petitioner. On September 16, 2009, the Court vacated the stay and, on November 23, 2009, granted petitioner's motion to amend and ordered the Second Amended Petition ("SAP") filed as of February 4, 2009. On December 18, 2009, respondent filed a Second Supplemental Return to the SAP. On January 19, 2010, petitioner filed a Reply to Respondent's Return to the SAP.

On August 31, 2010, the Magistrate Judge issued a Report and Recommendation ("R&R"), recommending that the SAP be granted as to Ground One and that an Order be issued directing respondent to release petitioner unless the State of California elects to grant petitioner a new trial within 90 days. On October 13, 2010, respondent filed Objections to the R&R ("Objections"). On November 12, 2010, petitioner filed a Response to the Objections.

## **DISCUSSION**

As respondent concedes, the state court used the wrong legal standard at step one of the Batson analysis. (See R&R at 26-27). Accordingly, the Magistrate Judge conducted a de novo review of petitioner's Batson claim. (See id. at 27 n. 9) (cases cited therein). Although the Magistrate Judge's legal conclusions are reviewed de novo, his factual and credibility findings are reviewed for clear error. See Crittenden v. Ayers, 624 F.3d 943, 954 (9th Cir. 2010, as amended Nov. 2, 2010) ("Factual findings and credibility determinations that were not made by the trial court but were made by the district court after an evidentiary hearing are reviewed for clear error."); Dix v. United States, 2010 WL 3069913, at *1 (W.D. Wash. 2010) (reviewing magistrate judge's credibility determination for clear error); Pakes v. Yates, 2007 WL 1655574, at *2 (N.D. Cal. 2007) (reviewing magistrate judge's factual findings for clear error); see also Gonzalez v. Pliler, 395 F.App'x 453, 456 (9th Cir. 2010) (unpublished per curiam opinion) (where the district court rejects the magistrate judge's factual findings, it may have to conduct its own de novo evidentiary

hearing); McKnight v. Torres, 563 F.3d 890, 892 (9th Cir. 2009) ("We review de novo whether the district court erred in denying a habeas corpus petition . . .; we review factual questions, as determined by the . . . magistrate judge, for clear error."). The Magistrate Judge's factual and credibility determinations will be overturned only if this Court reaches a "definite and firm conviction that a mistake has been committed." Wolpin v. Philip Morris Inc., 189 F.R.D. 418, 422 (C.D. Cal. 1999) (internal quotation marks and citation omitted).

A. Objections Re: Step One.

Respondent asserts that the "prosecutor's pattern of peremptory challenges disproves a discriminatory purpose." (See Objections at 2-5) (bold and capitalization omitted). According to respondent, the prosecutor accepted the jury several times with as many as three Latino members before accepting the final jury with one Latino member, Juror No. 3758. (Id. at 4 & 5). Respondent asserts that the prosecutor's repeated acceptance of panels with multiple Latino jurors is "patently inconsistent" with discriminatory intent. (Id. at 4). Respondent's assertions are unpersuasive.

As an initial matter, respondent frequently makes assertions in his Objections that are not supported by any citations to the record, or merely reflect a different interpretation of the record.[1] (See, e.g., Objections at 2, 4-5, 8-10, 15-16, 18 & 19-20). For example, respondent suggests that the Magistrate Judge should have deferred to the trial court's finding that no prima facie case of discrimination was established by petitioner. (See id. at 2) ("Respondent contends that at the time of Petitioner's second *Batson* motion, the trial court's finding that no prima facie case was made was correct, based upon the information available to the trial court and a rational interpretation of the statistical implication of the prosecutor's peremptory challenges.") (italics in original); (see also id. at 4). However, the Batson analysis is concerned with the prosecutor's reasons for striking the subject juror, not the trial judge's view as to why the prosecutor may have stricken a particular juror. See Miller-El v. Dretke (Miller-El 2), 545 U.S. 231, 251-52, 125 S.Ct. 2317, 2331-32 (2005)

---

[1] The Court will not address contentions that are unsupported by citations to the record or merely reflect a disagreement with the Magistrate Judge's de novo review.

3

("If the [prosecutor's] stated reason does not hold up, its pretextual significance does not fade because a trial judge, or an appeals court, can imagine a reason that might not have been shown up as false."). Further, respondent's Objections fail to take into account – despite his concession that the state court applied the wrong standard at step one of the Batson analysis (see Resp's Memo at 4-5) – that "the state court used the 'strong likelihood' standard for reviewing [petitioner]'s *Batson* claim," and, therefore, "the state court's findings are not entitled to [AEDPA] deference and [this Court's] review is de novo." Williams v. Runnels, 432 F.3d 1102, 1105 (9th Cir. 2006) (italics in original); (see R&R at 26-27 & n. 9).

      In any event, respondent's Objections with respect to step one do not directly address the Magistrate Judge's statistical analysis. (See, generally, Objections at 2-6). Other than stating that the trial court's finding of no prima facie case was correct "based upon the information available to the trial court and a rational interpretation of the statistical implication of the prosecutor's peremptory challenges[,]" (id. at 2), respondent does not contend or otherwise establish that the Magistrate Judge's statistical analysis is clearly erroneous or otherwise unsupported by the record. Here, the Magistrate Judge found that two different statistics – the percentage of available Latino jurors challenged and the percentage of peremptory challenges used against Latino jurors – presented a statistical disparity that, on its own, is sufficient to make out a prima facie case at step one. (See R&R at 29-31) (cases cited therein). Further, there is other evidence (in addition to the statistical disparity) to support the Magistrate Judge's step one findings. For example, the Magistrate Judge noted the striking of Juror No. 4768,[2] the prosecutor's tracking of venire members' race, and the comparative juror analysis as additional evidence to support an inference of bias at step one. (See id. at 29, 33 & 54-59); see also Williams, 432 F.3d at 1107 ("[W]hen reviewing a *Batson* claim, a court should continue to consider any other relevant circumstances brought to their attention that may support or refute an inference of discriminatory purpose.")

---

[2] Although respondent mentions Juror No. 4768 during his description of the use of strikes during the voir dire process, (see Objections at 3), respondent does not challenge the Magistrate Judge's discussion, (see R&R at 55-58), with respect to the striking of Juror No. 4768. (See, generally, Objections at 1-21).

4

(internal quotations marks omitted) (italics in original).

Batson's "inference" standard "was intended significantly to reduce the quantum of proof previously required of a defendant who wished to raise a claim of racial bias in the jury selection procedure[]" and, thus, "is not onerous." Wade v. Terhune, 202 F.3d 1190, 1197 (9th Cir. 2000) (internal quotation marks and citation omitted). It is not necessary, as respondent's argument implies, to prove a "discriminatory purpose" at step one. (See Objections at 2-5). All that is required is that the moving party "produc[e] evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred." Johnson v. California, 545 U.S. 162, 170, 125 S.Ct. 2410, 2417 (2005). Further, "[a] single inference of discrimination based on all the relevant circumstances and the totality of relevant facts is sufficient to move the *Batson* inquiry to step two." United States v. Collins, 551 F.3d 914, 920 (9th Cir. 2009) (citing Batson, 476 U.S. at 94 & 96, 106 S.Ct. at 1721 & 1723) (internal quotation marks and brackets omitted) (italics in original).

Here, the Magistrate Judge analyzed the statistical pattern in the exercise of peremptory challenges in the context of when the Batson challenge was made, which was well after the prosecutor's initial acceptance of panels with multiple Latino jurors. See Paulino v. Castro (Paulino I), 371 F.3d 1083, 1091 (9th Cir. 2004) ("We sometimes consider whether the [temporal] context in which a defendant made a *Batson* objection changes the significance of a statistical pattern in the exercise of peremptory challenges.") (italics in original); (R&R at 29-30 & n. 11). Under the circumstances, the prosecutor's "active and passive acceptance of panels with Hispanic" jurors during the early stages of the voir dire, (see Objections at 5), does not – in light of the de novo standard of review and other evidence of bias – dispel the inference that discrimination has occurred. Moreover, with respect to Juror No. 3758, the Magistrate Judge gave respondent the benefit of the doubt as to whether that juror is Latino. (See R&R at 29 n. 10). However, as the Magistrate Judge noted, the prosecutor classified Juror No. 3758 as white on his voir dire notes. (See id. at 33 n. 15; Evidentiary Hearing, Exh. 6). The prosecutor's perception of a juror's race or ethnicity is what matters in the Batson analysis. See United States v. Guerrero, 595 F.3d 1059, 1063 n. 3 (9th Cir. 2010) ("*Batson* is predicated not on the potential juror's actual race/ethnicity, but on the prosecutor's perception of that race/ethnicity as the reason for striking

5

an otherwise qualified venire person. This is true because *Batson* is seeking to cure government misconduct based on racial prejudice, not to simply guarantee an ethnically diverse jury.") (italics in original). Thus, with the exception of a Latino alternate juror, the prosecutor believed that his strikes resulted in a jury devoid of any Latinos.[3]

Finally, respondent contends that the Magistrate Judge erred in refusing to find that it is "common knowledge" that "the population of 'new Americans,' those who have immigrated to this country and become naturalized[] ha[ve] a significant and statistically higher incidence of difficulty with English than native born Americans." (Objections at 5). Respondent's contention is unpersuasive. As an initial matter, the case relied on by respondent, (see id. at 6) (citing Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859 (1991)), addressed the believability of the prosecutor's explanations at step three, not whether a statistical inference of discriminatory purpose was demonstrated at step one. See Hernandez, 500 U.S. at 364, 111 S.Ct. at 1868. Also, the petitioner in Hernandez apparently put forth evidence and/or sufficient information for the trial court to make a finding regarding the ethnic make-up of the local community. See id. at 360, 111 S.Ct. at 1866-67 ("[Petitioner] points to the high correlation between Spanish-language ability and ethnicity in New York, where the case was tried."). The trial court in this case made no findings about the racial, ethnic and immigrant composition of the community in which petitioner's trial took place or the language ability of Latinos and Asians in that community. For example, there is no evidence as to the breakdown between Latino (or for that matter, Asian) jurors who are immigrants and naturalized citizens and Latino jurors who are native born Americans.

Even assuming, as respondent contends, that it is "common knowledge" that those who have immigrated to this country and have become naturalized have a statistically higher incidence of difficulty with English than native born Americans, (Objections at 5), that means little in the context of this case because there is no information as to whether the Latino jurors are native born

---

[3] As part of his step three arguments, respondent contends that, despite the prosecutor's contemporaneous voir dire notes, the prosecutor testified – nearly six years after the voir dire was completed – that Juror No. 3758 is Latino. (See Objections at 7-8). Regardless, as discussed above, the Magistrate Judge gave respondent the benefit of the doubt and treated Juror No. 3758 as Latino for purposes of the step one analysis. (See R&R at 29 n. 10).

6

or naturalized citizens. Respondent's contention is based on an unverifiable assumption that the Latino jurors in petitioner's case were largely immigrants who became naturalized American citizens. However, there is no factual basis from which to draw such a conclusion, and respondent did not put forth any evidence or information to support such a conclusion. Based on the record before the Court, the Court is unqualified – and, therefore, unwilling to assume – to make a determination that the Latino jurors in petitioner's case are immigrants who became naturalized citizens and have difficulty with English. Finally, even if the Latino jurors in petitioner's trial were all (or even a substantial majority) immigrant Americans who are less proficient in speaking English than native born residents, (see Resp's Memo at 9; Objections at 6), there is no reason why that conclusion would not apply to the Asian jurors in this case. Yet, respondent makes no effort to explain why Latino jurors were excused by the prosecutor at a higher rate than Asian jurors.

In short, having reviewed step one of the Batson inquiry de novo, see Williams, 432 F.3d at 1110, the Court is persuaded, based on its review of the record, that the totality of circumstances raises an inference of discrimination and, therefore, the state court erred by not advancing to step two of the Batson inquiry.

B.  Objections Re: Step Three.

Respondent makes a number of arguments in an attempt to undermine the Magistrate Judge's step three analysis. (See Objections at 6-20). First, respondent contends that the prosecutor had valid reasons for striking Juror No. 1205 and not striking Juror No. 3063, both of whom had language difficulties. (See id. at 8-12). Respondent asserts that there were material differences between the two jurors in that Juror No. 3063 had high establishment credentials due to her family members' educational and occupational credentials. (See id. at 8). Respondent's contentions are unpersuasive.

The Supreme Court has clearly stated that comparative jurors do not have to be identically situated to conduct a comparative analysis. See Miller-El 2, 545 U.S. at 247 n. 6, 125 S.Ct. at 2329 n. 6 ("None of our cases announces a rule that no comparison is probative unless the

7

situation of the individuals compared is identical in all respects, and there is no reason to accept one. . . . A *per se* rule that a defendant cannot win a *Batson* claim unless there is an exactly identical white juror would leave *Batson* inoperable; potential jurors are not products of a set of cookie cutters.") (italics in original); (see R&R at 48) (cases cited therein). Further, given the prosecutor's overwhelming concern with the language abilities of the various jurors, which the prosecutor emphasized throughout the Evidentiary Hearing, (see ERT at 24-30, 32, 37, 72-74, 94, 96-98, 101, 105-06, 128 & 138), and the fact that the prosecutor struck three of four Latinos based on their alleged difficulty with English, (see id. at 23-24, 31-32 & 37), it is clear that the relevant attribute in conducting a comparative juror analysis in this case is a juror's language ability. See Collins, 551 F.3d at 922 ("An inference of discrimination may arise when two or more potential jurors share the same relevant attributes but the prosecutor has challenged only the minority juror."); see, e.g., United States v. Chinchilla, 874 F.2d 695, 698-99 (9th Cir. 1989) (holding that a struck juror's place of residence was an inadequate explanation for a challenge because an unchallenged juror resided in the same location).

Also, as the Magistrate Judge noted, the prosecutor did not testify regarding Juror No. 3063 at the Evidentiary Hearing. (See R&R at 48-49). Thus, there is nothing in the record to support respondent's assertions that the prosecutor kept Juror No. 3063 because of her "high establishment credentials." (See Objections at 8-10). The fact that "Respondent pointed out in his briefing following the hearing [that] Juror No. 3063 had 'high establishment credentials[,]'" (Id. at 8), is insufficient. "The arguments that the State has made since the evidentiary hearing do not form part of the prosecutor's explanation[.]" Turner v. Marshall (Turner II), 121 F.3d 1248, 1253 (9th Cir. 1997, as amended Sept. 22, 1997), cert. denied, 522 U.S. 1153, 118 S.Ct. 1178 (1998).

Similarly, the Court is unpersuaded by respondent's contention that the prosecutor's acceptance of Juror No. 3063 on the panel early in the voir dire process is irrelevant because it "ignores any tactics the prosecutor might use to gain a perceived advantage in peremptory challenges[.]" (Objections at 12). There is no evidence that the prosecutor's decision to keep Juror No. 3063 was due to strategic concerns. Also, there is no explanation as to why the

prosecutor would not have taken a similar "tactical" risk by allowing Juror No. 1205 to remain in the jury box for a possible strike later. As the Magistrate Judge noted, there was nothing in Juror No. 1205's answers to the trial court's or defense counsel's questions that suggested a reason for removal of Juror No. 1205. (See R&R at 44). To the extent respondent suggests other, potentially race-neutral reasons as to why the prosecutor might have wanted to exclude Juror No. 1205, (see, e.g., Objections at 10) ("Juror No. 1205's . . . husband worked for a car dealer. Some people reasonably question the integrity of car dealers. Also, one of her children was in high school, a time when young people are tempted and challenged by influences like gangs . . . ."), the Court is unpersuaded. During the Evidentiary Hearing, the prosecutor testified that the only reason he excluded Juror No. 1205 was because of her difficulty with English. (See ERT at 37-38). The prosecutor said nothing about Juror No. 1205's husband being a car dealer or her high-school aged child being a reason for striking Juror No. 1205. Again, "[t]he arguments that the State has made since the evidentiary hearing do not form part of the prosecutor's explanation[.]" Turner II, 121 F.3d at 1253.

Second, respondent raises an argument he asserted with respect to step one, namely that "[e]ach time the prosecutor accepted the panel with Juror No. 3063 on it, there were at least two, and as many as three, Hispanic jurors on the panel as well." (Objections at 12). Respondent asserts that "[t]he Magistrate Judge concluded the prosecutor was intent on removing all Hispanic jurors" and that "the analysis applied to Hispanic and non-Hispanic jurors is clearly inconsistent." (Id. at 12-13). Respondent's assertions conflate steps one and three of the Batson analysis and misstate the Magistrate Judge's conclusions. The Magistrate Judge's de novo review found that the statistical evidence as well as other evidence in the record support an inference of bias at step one. (See R&R at 26-34). At step three, based on the record developed in the Evidentiary Hearing as well as an assessment of the prosecutor's credibility, the Magistrate Judge concluded that the prosecutor's reason for striking one Latino juror – Juror No. 1205 – was a pretext for discrimination. (See id. at 41-52); see Williams, 432 F.3d at 1107 (The "Constitution forbids striking even a single prospective juror for a discriminatory purpose.") (internal quotation marks

and citation omitted).

Third, respondent argues that the Magistrate Judge erred in using the prosecutor's racial identification of the venire members as evidence of discrimination. (See Objections at 13-16). Specifically, respondent contends that the Magistrate Judge omitted the prosecutor's statement that when he has had "to make challenges, and criminal cases, *most often*, the time which I've seen this is when defense is doing Asian jurors." (Id. at 14) (italics in original). Respondent contends that the Magistrate Judge misconstrued the prosecutor's testimony because, rather than using the words, "most often," the Magistrate Judge stated that the prosecutor "<u>sometimes</u> tracks the defense challenges to see if they are discriminating against Asian jurors." (R&R at 55) (emphasis added). Respondent's contentions are unpersuasive. There is no functional difference between the two statements, i.e., between saying that the prosecutor "most often" or "sometimes" tracked defense strikes with respect to Asian jurors. Further, although respondent believes that "the conclusion that keeping track of the ethnicity of all the potential jurors is evidence of a discriminatory purpose lacks logical force[,]" (Objections at 14), courts have indicated that noting the race of venire members may indicate racial discrimination in jury selection. See, e.g., Miller-El v. Cockrell (Miller-El 1), 537 U.S. 332, 347, 123 S.Ct. 1029, 1045 (2003) ("The supposition that race was a factor could be reinforced by the fact that the prosecutors marked the race of each prospective juror on their juror cards."); Green v. LaMarque, 532 F.3d 1028, 1033 (9th Cir. 2008, as amended Aug. 4, 2008) (finding additional evidence of racial discrimination where "the prosecutor had noted the race of each venire member he struck from the jury pool"). Here, the prosecutor's racial tracking of the venire was but one piece of "other evidence" that the Magistrate Judge relied on in concluding that the prosecutor's reason for striking Juror No. 1205 was pretextual. (See R&R at 52-58).

Respondent also complains that the Magistrate Judge erred in his "dismissal" as "unfounded" of the prosecutor's testimony relating to his experience that it was Asian jurors who were "most often" the subject of strikes by defense counsel. (See Objections at 15-16). Testimony, especially conclusory testimony such as the one at issue, is not admissible without a proper foundation. See, e.g., Bradlow v. Castano Group, 2008 WL 929613, at *13 (N.D. Cal.

2008), aff'd, 365 F.App'x 883 (9th Cir. 2010) (witness's conclusory testimony "lack[ed] foundation and [was] inadmissible speculation as to the contents of the minds of others[,]" and his "declaration fail[ed] to set forth any [facts] that would lay a foundation for his conclusions[]"); King v. City of Chicago, 2007 WL 4365325, at *6 (N.D. Ill. 2007) (testimony lacked proper foundation and, thus, was inadmissible). Here, there is nothing factual in the record to support the prosecutor's testimony. (See, generally, ERT at 18-19); see also Fed. R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); Visser v. Packer Eng'g Assocs., Inc., 924 F.2d 655, 659 (7th Cir. 1991) ("It is true that 'personal knowledge' includes inferences – all knowledge is inferential – and therefore opinions. But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience.") (citations omitted). Thus, the prosecutor's testimony – even assuming it was based on the prosecutor's "individual experience" – is nothing more than the prosecutor's opinion that Asian jurors were "most often" the subject of strikes by defense counsel. "To credit such a general utterance would nullify the principle of law and would constitute the functional equivalent of 'take my word for it,' with the trial judge saying, 'Yes, I will.' Where a nonverifiable utterance is made sufficient to satisfy a principle of law, the principle is usually lost." People v. Khoa Khac Long, 189 Cal.App.4th 826, 847 (2010). Finally, it was the Magistrate Judge's responsibility to make evidentiary, factual and credibility determinations, and respondent has not established that any of those determinations were clearly erroneous.

Fourth, respondent contends that the Magistrate Judge misstated the prosecutor's testimony as to his reason for striking Juror No. 1205. (See Objections at 16). The Magistrate Judge did not find credible the prosecutor's claim that Juror No. 1205 did not have sufficient command of the English language because she did not work at a hospital in this country. (See R&R at 43). Respondent claims that the prosecutor's reasoning was but "one factor" and there were other reasons, even though respondent concedes that those reasons were "all speculation on [the prosecutor's] part[.]" (See Objections at 16) (internal quotation marks omitted). "[T]he

1 prosecutor is responsible for articulating his own reasons for the challenges exercised." <u>Green</u>,
2 532 F.3d at 1030. While the prosecutor may have had other reasons (other than language
3 difficulty) for rejecting Juror No. 1205, he did not voice them. (<u>See</u>, <u>generally</u>, ERT at 37-38).
4 Here, the record is clear that the prosecutor provided only one reason – difficulty with English –
5 for striking Juror No. 1205. (<u>See</u> <u>id.</u>). As the Supreme Court has stated:

> [T]he rule in *Batson* provides an opportunity to the prosecutor to give the reason for striking the juror, and it requires the judge to assess the plausibility of that reason in light of all evidence with a bearing on it. It is true that peremptories are often the subjects of instinct, and it can sometimes be hard to say what the reason is. But when illegitimate grounds like race are in issue, a prosecutor simply has got to state his reasons as best he can and stand or fall on the plausibility of the reasons he gives. A *Batson* challenge does not call for a mere exercise in thinking up any rational basis. If the stated reason does not hold up, its pretextual significance does not fade because a trial judge, [the Attorney General,] or an appeals court, can imagine a reason that might not have been shown up as false.

<u>Miller-El 2</u>, 545 U.S. at 251-52, 125 S.Ct. at 2331-32 (internal quotation marks omitted) (italics in original).

Fifth, respondent argues that the prosecutor's failure to ask any follow-up questions of Juror No. 1205 to clarify her language ability "is dispositive of nothing." (<u>See</u> Objections at 18; <u>see also</u> <u>id.</u> at 16-18). Citing examples of two jurors who were not asked any questions, respondent asserts that "[t]he mere fact that the prosecutor did not ask some jurors questions is dispositive of nothing." (<u>Id.</u> at 18). Given the prosecutor's significant concern with the language abilities of the various jurors, (<u>see</u> ERT at 24-30, 32, 37, 72-74, 94, 96-98, 101, 105-06, 128 & 138), as well as his testimony that he would ask follow-up questions if he had any concern about a prospective juror's ability to understand the proceedings, (<u>see</u> <u>id.</u> at 26), respondent's assertions are meritless.

Neither of the two examples cited by respondent – Juror Nos. 9046 and 3758[4] – had issues relating to their difficulty with English. Under the circumstances, the Magistrate Judge's credibility finding is not clearly erroneous where the Magistrate Judge found that the prosecutor's failure to ask Juror No. 1205 any questions about her language skills, and whether those skills (or lack thereof) affected her ability to work in a hospital in this country, undermined the plausibility of the prosecutor's claimed concern with Juror No. 1205's language ability. See Green, 532 F.3d at 1033 ("[T]he prosecutor's stated reason that Deborah P.'s five jobs illustrated she could not get along well with others was undermined by the fact that he did not ask her a single question about why she changed jobs."); Miller-El 2, 545 U.S. at 250 n. 8, 125 S.Ct. at 2330 n. 8 ("[T]he failure to ask undermines the persuasiveness of the claimed concern.").

Finally, respondent argues that Juror No. 3063's answers do not support the Magistrate Judge's conclusion that her command of English was worse than Juror No. 1205's.[5] (Objections at 20). However, the Magistrate Judge concluded that Juror No. 3063's language abilities were similar, if not worse, than Juror No. 1205's. (See R&R at 43). In any event, the Magistrate Judge's review of the record was de novo, and his factual findings and credibility determination were not clearly erroneous.

## **CONCLUSION**

In sum, because the state court determined that petitioner had not established a prima facie case of discrimination, it never required the prosecutor to provide his actual reasons for his strikes and the state court never made any findings with respect to steps two and three, i.e., there are no state court findings to presume correct on habeas review. Thus, the Magistrate Judge conducted a de novo review and made his own credibility determination of the prosecutor's explanation for striking the subject juror. The Magistrate Judge's de novo review of "all of the circumstances that

---

[4] As noted earlier, although the Magistrate Judge gave respondent the benefit of the doubt as to whether Juror No. 3758 is Latino, (see R&R at 29 n. 10), the prosecutor classified her as white on his voir dire notes. (See id. at 33 n. 15; Evidentiary Hearing, Exh. 6).

[5] Given that the comparison between Juror Nos. 1205 and 3063 is the crux of the Magistrate Judge's analysis, (see R&R at 43-49), it is curious that respondent devotes only a few paragraphs at the end of his Objections to disputing these findings. (See Objections at 19-20).

bear upon the issue of racial animosity," Snyder v. Louisiana, 552 U.S. 472, 478, 128 S.Ct. 1203, 1208 (2008), including an evaluation of the prosecutor's credibility, see id. at 477, 128 S.Ct. at 1208, found that race was a substantial or motivating factor contributing to the prosecutor's exercise of his peremptory challenge to Juror No. 1205.  Under the circumstances, the Court is convinced, based on its review of the record, that the Magistrate Judge's factual findings and credibility determinations are supported by the record.

Based on the foregoing and pursuant to 28 U.S.C. § 636, the Court has reviewed the SAP, all of the records herein, the Report and Recommendation of the United States Magistrate Judge, the Objections, and the Response to the Objections.  The Court has made a de novo determination of the portions of the Report and Recommendation to which the Objections and Response to the Objections were directed.  The Court concurs with and adopts the findings and conclusions of the Magistrate Judge.  Accordingly, IT IS ORDERED THAT:

1. Judgment shall be entered granting Ground One in the Second Amended Petition.
2. Respondent is directed to release petitioner unless the State of California elects to grant petitioner a new trial within 90 days.
3. The Clerk shall serve copies of this Order and the Judgment herein on the parties.

DATED: November 22, 2011.

_____
VIRGINIA A. PHILLIPS
UNITED STATES DISTRICT JUDGE